UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOOD BUSINESS OR NO BUSINESS LLC and all those similarly situated,

Plaintiff,

v.

CITY OF DETROIT,

Defendant,

v.

MICHIGAN ATTORNEY GENERAL,

Intervenor.

Case No. 25-10308
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING INTERVENOR'S MOTION TO DISMISS [32]**

Good Business' insurance proceeds were withheld through the Michigan Fire Insurance Withholding Program (FIW Program), a state initiative created to help municipalities encourage property owners to restore or demolish fire-damaged property. Mich. Comp. Laws § 500.2227. Good Business believes this withholding constituted an unconstitutional taking and inverse condemnation, so it filed this putative class action against the City of Detroit. (ECF No. 1.)

The Court certified the case to Michigan Attorney General Dana Nessel as an action challenging the constitutionality of a state statute. (ECF Nos. 17, 18.) Nessel moved to intervene in defense of the FIW Program (ECF No. 19), which the Court allowed (ECF No. 24).

Nessel now moves to dismiss the complaint (ECF No. 32), which the City of Detroit joins (ECF No. 36). The motion is fully and adequately briefed (ECF Nos. 32, 35, 38) and does not require further argument. E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is GRANTED.

**I.**

In considering arguments under Federal Rule of Civil Procedure 12(b)(6), the Court "construes the complaint in the light most favorable" to Good Business and determines whether the "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Good Business does not need to provide detailed factual allegations to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but the allegations in its complaint must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Determining what is plausible is "a context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**II.**

Before addressing the merits of Nessel's motion to dismiss, the Court resolves Good Business' several "objections" to that filing. (ECF No. 35, PageID.344–346.)

Good Business begins its brief with an "objection" that treads old territory, restating a twice-rejected argument that Nessel's motion to dismiss is improper because her intervention "exceeds the limited role authorized by Article III of the

United States Constitution as well as 28 U.S.C. § 2403(b).” (*Id.* at PageID.344.) For the reasons provided in the Court’s previous orders rejecting this same objection, Good Business’ Article III position fails now just as it did before. (*See* ECF Nos. 24, 39.)

In an argument derivative of its Article III theory, Good Business maintains that Nessel’s “limited intervening status” “does not render [her] a party under Rule 12(b)(6) because [she] has not been sued.” (ECF No. 35, PageID.345.) But the statute through which Nessel has intervened expressly gives her “all the rights of a party[,]” including the ability to present “argument on the question of constitutionality” of a state statute. 28 U.S.C. § 2403(b). A “party” has the right to file dispositive motions. Fed. R. Civ. P. 12(b)(6), 12(c), 56. That means Nessel does as well. *See Lowden v. Cnty. of Clare*, 709 F. Supp. 2d 540, 544–45 (E.D. Mich. 2010) (“Michigan Attorney General Michael Cox was invited to intervene within sixty days pursuant to 28 U.S.C. § 2403(b) to defend the constitutionality of the Michigan statute . . . the Attorney General accepted the invitation to intervene and filed a motion for summary judgment”); *McKee Foods Corp. v. BFP Inc.*, No. 21-279, 2024 WL 5701500, at *1 (E.D. Tenn. Nov. 12, 2024) (state attorney general filed motion to dismiss after he “sought and received permission to intervene pursuant to 28 U.S.C. § 2403(b)”). Thus, Nessel’s status as an intervenor does not prevent her from filing a motion to dismiss.

Alternatively, Good Business argues that Nessel’s motion is untimely. (ECF No. 35, PageID.345–346.) On this front, Good Business maintains that motions to dismiss under Rule 12(b)(6) must be filed before an answer. (*Id.*) That is correct as a

general matter. But Good Business conflates *The City of Detroit's* answer with *Nessel's* motion. Indeed, the City answered the complaint well before Nessel sought and received permission to intervene, which allowed her to file a motion to dismiss. (*Compare* ECF No. 15, *with* ECF Nos. 19, 24.) In any event, this argument is of no consequence because the Court can construe Nessel's motion under Federal Rule of Civil Procedure 12(c), which may be filed "[a]fter the pleadings are closed" and which relies on the same standard as Rule 12(b)(6). Fed. R. Civ. P. 12(c); *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 423 (6th Cir. 2013). As a result, Good Business' timeliness argument fails.

For these reasons, the Court proceeds to the merits of Nessel's motion to dismiss.

## III.

The Court starts with a brief overview of the state FIW Program. Detroit is one of hundreds of municipalities participating in this state-wide program. (*See* ECF No. 15, PageID.92.) The program was "designed to encourage property owners to use the proceeds of major fire insurance claims to rehabilitate or remove damaged buildings" by empowering municipalities to create "special escrow accounts to claim and hold" a portion of a property owner's "insurance awards" until the property is repaired or cleared. (ECF No. 15-12, PageID.157 (Detroit City Council Resolution adopting the program).) If an owner fails to repair or clear fire-damaged property, and Detroit ends up incurring costs for the property's repair or demolition, it may reimburse itself with the funds held in escrow. (*See id.*) But if the property owner complies with local

directives to demolish or remedy building code violations, their withheld insurance proceeds are returned. Mich. Comp. Laws § 500.2227(5).

Good Business' involvement with the FIW Program started on November 13, 2024, after a fire at a residential property it owned. (ECF No. 1, PageID.3.) Local inspectors visited the home, photographed it, deemed it unsafe, and recommended emergency demolition. (ECF No. 15-2, PageID.112–132; ECF No. 15-6, PageID.130, 131.) On November 18, the insurer covering the property notified local officials that, pursuant to the FIW Program, it would withhold 25% of the insurance payout—a total of $24,000. (ECF No. 15-5, PageID.127–128; ECF No. 32, PageID.310.) On November 19, Detroit ordered emergency demolition of the property and instructed Good Business to comply or forfeit its withheld insurance funds. (*See* ECF No. 15-7, PageID.133–139.) Good Business allegedly failed to comply with this order (ECF No. 15, PageID.96–97), so Detroit scheduled and paid for demolition of the property. (*Id.*) Detroit possesses Good Business' withheld insurance funds. (ECF No. 1, PageID.4.)

That withholding led to this lawsuit. (*See id.*) Good Business brings three claims: a Fifth and Fourteenth Amendment takings claim for the insurance proceeds (Count I) and interest on those proceeds (Count II), as well as an inverse condemnation claim (Count III). (*Id.* at PageID.9–12.) The Court addresses each.

**IV.**

**A.**

"[T]he Takings Clause of the Fifth Amendment . . . as applied to the states through the Fourteenth Amendment, prohibits the government from taking 'private

property' for 'public use, without just compensation.'" *Rubicon Real Est. Holdings, LLC v. City of Pontiac, Michigan*, 179 F.4th 431, 447 (6th Cir. 2026) (citations omitted). "A takings claim necessarily requires proof of a cognizable property interest as well as a government taking of that interest without just compensation." *Id.* (citing *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016)).

"In order to prevail on a takings claim, the plaintiff must 'first demonstrate that [he has] a legally cognizable property interest.'" *Meth v. Kilpatrick*, No. 08-11589, 2008 WL 4960171, at *4 (E.D. Mich. Nov. 20, 2008) (quoting *McCarthy v. Middle Tennessee Elec. Membership Corp.,* 466 F.3d 399, 412 (6th Cir. 2006)). "'To have a property interest . . . a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Rubicon Real Est. Holdings, LLC*, 179 F.4th at 447 (quoting *Hamby v. Neel,* 368 F.3d 549, 557 (6th Cir. 2004)). "Property interests 'are not created by the Constitution' but rather are 'defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972)).

Thus, "[b]efore the Court considers the sufficiency of the claims themselves," "a threshold question *must* be answered: did [Good Business] ha[ve] a protected property interest subject to constitutional protection" when the insurance proceeds and interest were withheld under the FIW Program? *Northville Downs, LLC v. Plymouth Charter Twp.*, No. 24-10492, 2025 WL 2048358, at *5–6 (E.D. Mich. Apr. 21, 2025) (emphasis in original) (dismissing takings claim where the court found that

plaintiff had "no protected property interest"); *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 469 (6th Cir. 2021) ("[N]o takings claim can proceed without a valid property interest.").

From persuasive Third Circuit Court of Appeals reasoning in *In re Trs. of Conneaut Lake Park, Inc.*, 855 F.3d 519 (3d Cir. 2017), the answer is no. There, the court considered whether a plaintiff had a legally cognizable property interest in insurance proceeds, sufficient to bring a takings claim, where a state law conditioned receipt of those funds on payment of delinquent taxes. *Id.* at 525–26. That court concluded that the plaintiff "had no legally cognizable property interest in the entirety of the proceeds from its insurance policy" because the state law "made receipt of such proceeds conditional on satisfying the delinquent taxes owed on the insured property." *Id.* at 526. Similarly, Good Business' receipt of a portion of its insurance proceeds and interest on those proceeds was conditioned on the FIW Program's requirement for restoration or destruction of fire-ridden property.

That means Good Business did not have a "legitimate claim of entitlement" to those funds. *Rubicon Real Est. Holdings, LLC*, 179 F.4th at 447 (citation omitted). A brief timeline helps explain. Detroit began participating in the FIW Program in 1982. (ECF No. 15-12, PageID.157 (Detroit City Council Resolution adopting the program).) Good Business, however, did not become an LLC until 2020, or 38 years later. *See* Michigan Department of Licensing and Regulatory Affairs, MiBusiness Registry Portal, https://perma.cc/8ZBY-522K. So the FIW Program "had been enacted by the [Michigan Legislature] and adopted by the required local ordinance long before [Good

Business] obtained its insurance policy." *Conneaut Lake Park*, 855 F.3d at 526. "Thus, the insurance policy incorporated the statute." *Id.*; *see Varner v. State Farm Fire & Cas. Co.*, No. 17-10082, 2017 WL 6539269, at *2 (E.D. Mich. Dec. 21, 2017) ("Insurance contracts are subject to statutory regulations, and mandatory, statutory provisions from the [Michigan] Insurance Code must be read into the contracts when applicable.") (citation omitted); *In re Belanger*, No. 361779, 2023 WL 3030728, at *2 (Mich. Ct. App. Apr. 20, 2023) ("The term 'shall' in a statute specifies a mandatory directive.") (citation omitted). Effective 1990, Michigan's Insurance Code mandated that "[e]ach fire insurance policy issued or delivered in this state *shall* contain[,]" among other things, reference to withholding under the FIW Program. Mich. Comp. Laws § 500.2833(p) (emphases added) (citing Mich. Comp. Laws § 500.2845). As a result, Good Business' "rights to any insurance proceeds were subject" to the FIW Program when its policy went into effect, which means it does not have a property interest in those proceeds or interest on those proceeds sufficient to state a takings claim. *See Conneaut Lake Park*, 855 F.3d at 526; *see also Wesley Health Care Ctr., Inc. v. DeBuono*, 244 F.3d 280, 281 (2d Cir. 2001) ("Wesley cannot show a property interest in the insurance proceeds that form the basis of its takings claim" based on various requirements under state and federal law).[1]

---

[1] Additionally, Good Business "cite[s] to no authority establishing that expected insurance proceeds are a protected property interest under the Constitution, and th[e] Court has found none." *A.J. ex rel. Dixon v. Tanksley*, 94 F. Supp. 3d 1061, 1071–72 (E.D. Mo. 2015), *aff'd*, 822 F.3d 437 (8th Cir. 2016). The Court recognizes the Sixth Circuit's position that the due process and takings analyses may differ. *See Rubicon Real Est. Holdings, LLC v. City of Pontiac, Michigan*, 179 F.4th 431, 447 (6th Cir. 2026) ("The property interest required to support a takings claim differs from

Good Business' reliance on a single case, *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), does not change this result. According to Good Business, "*Hall* confirms that when the government exercises dominion over private funds and restricts the owner's access to them, a cognizable property interest is at stake." (ECF No. 35, PageID.352.) But a "cognizable property interest" is not "at stake" merely because the state or a county has control over money. (*Id.*) As the Sixth Circuit described, "[t]he interest that the plaintiffs' invoke[d]" in *Hall* was "an entitlement to the equity in their homes—pursuant to principles long articulated." *Hall*, 51 F.4th at 190. The plaintiffs' claims in *Hall* stemmed from a Michigan statute that constituted "an aberration from some 300 years of decisions by English and American courts[,]" which allowed the state or a county "alone among all creditors" the ability to "take a landowner's equitable title without paying for it, when it collects a tax debt." *Id.* at 187–88. The Sixth Circuit reasoned that "[t]he government may not decline to recognize long-established interests in property as a device to take them." *Id.* at 188. But here, Good Business fails to show that insurance proceeds or interest on those proceeds, unlike

that required for a due process claim"). But the cases still provide helpful guidance. And "[a]mple case law holds that there is no [due process] property interest to insurance proceeds—even from policies issued by local governmental bodies." *Atkinson v. Pustilnik*, No. 22-04315, 2024 U.S. Dist. LEXIS 80141, at *29–30 (S.D. Tex. May 2, 2024) (citing *Loc. 342, Long Island Pub. Serv. Emps., UMB, ILA, AFL-CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994)); *Radder v. Cnty. of Maricopa*, No. 24-00173, 2025 U.S. Dist. LEXIS 22460, at *9–10 (D. Az. Feb. 6, 2025) (collecting cases). That is because "[i]nsurance payouts are subject to, *inter alia*, the policies and procedures of private insurance companies and the specific facts relating to a particular loss. They are not entitlements, as that term is understood in the context of the Fourteenth Amendment." *Jarrett v. Township of Bensalem*, 312 F. App'x 505, 508 (3rd Cir. 2009).

equity in one's home, are "long-established interests in property[,]" *id.*, or that the FIW Program is anything like "an aberration from some 300 years of decisions by English and American courts."

The Third Circuit's decision in *Conneaut Lake Park* did not extend beyond its conclusion that the plaintiff lacked a valid property interest. *Conneaut Lake Park, Inc.*, 855 F.3d at 526 ("[W]e need not determine whether there was an actual or regulatory taking because the party asserting the claim must have a 'legally cognizable property interest.'") (citation omitted). Courts in the Sixth Circuit have reasoned similarly. *Northville Downs, LLC*, 2025 WL 2048358, at *5–6 ("Having no protected property interest, the Court finds that [plaintiff's takings claim] fail[s] as a matter of law"); *Frazier v. City of Chattanooga*, 151 F. Supp. 3d 830, 839 (E.D. Tenn. 2015), *aff'd sub nom. Frazier v. City of Chattanooga, Tennessee*, 841 F.3d 433 (6th Cir. 2016) ("Where there is no property interest, there is no takings claim."); *Snyder v. Vill. of Luckey, Ohio*, No. 22-2282, 2024 WL 556134, at *8 (N.D. Ohio Feb. 12, 2024), *aff'd*, No. 24-3530, 2025 WL 3269361 (6th Cir. Nov. 24, 2025), and *aff'd*, No. 24-3530, 2025 WL 3269361 (6th Cir. Nov. 24, 2025) ("[Plaintiffs] have not identified a property interest of which they have been deprived. As such, the Court grants Defendant's motion to dismiss the takings claim."). This Court will follow suit and dismiss Good Business' takings claims.

**B.**

The Court turns next to Good Business' inverse condemnation claim. (ECF No. 35, PageID.359.) Good Business' complaint appears to bring this claim under both

the U.S. and Michigan constitutions (ECF No. 1, PageID.11), while its response brief asserts the claim only "under Michigan law" (ECF No. 35, PageID.359). Because Michigan's taking clause is interpreted more broadly than its federal counterpart, *see Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434, 449 (Mich. 2020), the Court will follow Good Business' lead and analyze this claim under state law.

"Under Michigan law, an individual may bring an inverse condemnation claim, which is available to property owners when government actions decrease their property's value, to remedy an alleged taking." *Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 306 (6th Cir. 2025) (citing *Krieger v. Dep't of Env't, Great Lakes, & Energy*, 17 N.W.3d 700, 724 (Mich. Ct. App. 2023)). "Inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken . . . even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Id.* (quoting *Mays v. Governor of Mich.*, 954 N.W.2d 139, 148 (Mich. 2020)) (citation omitted). "It 'can occur without a physical taking of the property; a diminution in the value of the property or a partial destruction can constitute a 'taking.'" *Id.* (quoting *Merkur Steel Supply Inc. v. City of Detroit*, 680 N.W.2d 485, 492 (Mich. Ct. App. 2004)) (citation omitted).

"To prevail on an inverse condemnation claim, a plaintiff must establish '(1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property.'" *Id.* (quoting *Krieger*, 17 N.W.3d at 725) (citation omitted). "An owner must demonstrate 'a unique or special injury, that is, an injury that is

different in kind, not simply in degree, from the harm suffered by all persons similarly situated.'" *Id.* (quoting *Spiek v. Michigan Dep't of Transp.*, 572 N.W.2d 201, 209 (Mich. 1998)).

But as a threshold matter, and like in the takings context, "a claimant must first establish a vested property right under state law" to bring an inverse condemnation claim. *Rafaeli, LLC*, 952 N.W.2d at 450; *Swiatek, Tr. of Josephine M. Swiatek Revocable Living Tr. v. Mecosta Cnty. Rd. Comm'n*, No. 369739, 2025 WL 3525525, at *7–8 (Mich. Ct. App. Dec. 8, 2025) ("[p]roperty rights are not created by constitutional law but, instead, are 'determined by reference to existing rules or understandings that stem from an independent source such as state law'") (quoting *Rafaeli*, 952 N.W.2d at 450).

And like in the takings context, Good Business has not done so. This dooms its inverse condemnation claim. *See, e.g.*, *id.* ("Plaintiff's inverse condemnation action fails because plaintiff has not shown a vested property right under state law"); *Four Lakes Dev., LLC v. Cass Cnty. Rd. Comm'n*, No. 372405, 2025 WL 3738574, at *9 (Mich. Ct. App. Dec. 26, 2025) (inverse condemnation claim failed where there was no "vested property right").

## V.

For the reasons provided above, Nessel's motion to dismiss (ECF No. 32) is GRANTED. Good Business has not shown the deprivation of a property interest. Thus, there is no basis to hold the FIW Program unconstitutional as applied to it and no basis to find a plausibly pled takings or inverse condemnation claim. If warranted,

the Court will notice a status conference with the parties to determine how, if at all, this case may proceed.

IT IS SO ORDERED.

Dated: September 29, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE